PER CURIAM:
The petition for rehearing en banc, treated as a petition for panel rehearing, is GRANTED. We withdraw our prior opinion, United States v. Kebodeaux, 634 F.3d 293 (5th Cir.2011), and substitute the following.
Defendant, Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intrastate change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act (“SORNA”), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A), read together with § 16913, because that provision regulates purely intrastate activities, rather than any aspect of Congress’s proper domain of interstate commerce— and that no other Article I source of authority permits Congress to impose SOR-NA’s registration and notification obligations on him. We conclude that § 2250(a)(2)(A) is constitutional.

BACKGROUND

In 1999, Kebodeaux, a twenty-one-year-old member of the United States Air Force, was convicted under Article 120 of the Uniform Code of Military Justice (“UCMJ”), 10 U.S.C. § 920, of Carnal Knowledge With a Child, and sentenced to three months of confinement and a bad conduct discharge. The victim was a fifteen-year-old with whom Kebodeaux had sexual relations to which the victim assented in fact though she lacked the legal ability to consent. Kebodeaux served his sentence and was discharged from the military. No term of supervised release was imposed.
On August 8, 2007, Kebodeaux registered as a sex offender in El Paso, Texas, and reported his residence at a street address in that city, in compliance with SOR-NA. See 42 U.S.C. § 16913. On January 24, 2008, El Paso police were unable to locate Kebodeaux at that address. On March 12, 2008, Kebodeaux was found and arrested in San Antonio, Texas. Kebodeaux admits that he did not update his registration or otherwise inform authorities of his relocation from El Paso to San Antonio as required by SORNA.[1] On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violation of SORNA, 18 U.S.C. § 2250(a).
Section 2250(a) makes it a crime punishable by up to ten years imprisonment if a person who:
(1) is required to register under [SOR-NA];
(2) (A) is a sex offender as defined for the purposes of [SORNA] by reason *139 of a conviction under Federal law (including the [UCMJ]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
(3) knowingly fails to register or update a registration as required by [SOR-NA],
Thus, “Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA’s registration [and updating] requirements: any person who is a sex offender ‘by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States’, § 2250(a)(2)(A), and any other person required to register under SORNA who ‘travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,’ § 2250(a)(2)(B).” Carr v. United States, — U.S. -, 130 S.Ct. 2229, 2238, 176 L.Ed.2d 1152 (2010) (alteration removed). Accordingly, “[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability.” Id. at 2235 n. 3 (citing § 2250(a)(2)(A)).
In response to Kebodeaux’s pre-trial filings, the Government stated that it was charging Kebodeaux solely because he fell under 18 U.S.C. § 2250(a)(2)(A), as he qualified as a sex offender “for the purpose of’ SORNA “by reason of a conviction under ... the [UCMJ]” and knowingly failed to update his registration when he moved intra-state, within Texas.[2] After a bench trial on the stipulated facts described above, Kebodeaux was convicted and subsequently sentenced below the Sentencing Guidelines recommendation to twelve months and one day of imprisonment, with a five-year term of supervised release. Kebodeaux timely appeals the constitutionality of his conviction and sentence.

DISCUSSION

We review challenges to the constitutionality of a conviction de novo. United States v. Whaley, 577 F.3d 254, 256 (5th Cir.2009).
Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)’s punishment of a federal sex offender — who has previously registered under SORNA— for knowingly failing to update his registration after an intrastate relocation in violation of the registration requirement imposed by § 16913. He concedes the constitutional validity of the balance of SORNA’s provisions.
We must begin any assessment of the constitutionality of a duly-enacted federal statute with a “presumption of constitutionality.” United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). This presumption itself is grounded in the Constitution: “Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds.” Id. We remain, of course, mindful that in some cases a party will succeed in making this “plain showing,” and that in those cases it is our obligation to declare the law unconstitutional. Cf. Morrison, 529 U.S. at 616, 627, 120 S.Ct. 1740 (holding part of the Violence Against Women Act outside Congress’s authority to enact); United States *140 v. Lopez, 514 U.S. 549, 567-68, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding the Gun-Free School Zones Act unconstitutional).
Along these lines, we note that we do not write on a blank slate as to SORNA, as it has withstood constitutional scrutiny on a number of fronts in the years since its enactment. Our court has previously held that, as applied to sex offenders who traveled across state lines, § 16913, taken together with § 2250(a)(2)(B), does not run afoul of the Commerce Clause, United States v. Whaley, 577 F.3d 254, 258 (5th Cir.2009), the Due Process Clause, id. at 262, or the non-delegation doctrine, id. at 264. We have also held that SORNA comports with the requirements of the Ex Post Facto Clause because “the forbidden act [viz., failure to register] is not one which was legal at the time [the appellant] committed it.” United States v. Young, 585 F.3d 199, 203-04 (5th Cir.2009); see also Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding Alaska’s state sex offender statute did not run afoul of the Ex Post Facto Clause because the law was “a regulatory scheme that is civil and nonpunitive” in intention and in fact). We have rejected challenges to the application of SORNA under the Due Process Clause where the involved states maintained sex offender registries but had not formally implemented SORNA. United States v. Heth, 596 F.3d 255, 259 (5th Cir.2010). We also have held that SORNA does not “compel the States to enact or enforce a federal regulatory program” in violation of the Tenth Amendment. United States v. Johnson, 632 F.3d 912, 920 (5th Cir.2011) (quoting Printz v. United States, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997)), petition for cert. filed, No. 10-10330 (U.S. filed May 3, 2011).[3] Furthermore, no other circuit has held any portion of SORNA unconstitutional,[4] and the few district courts that have rejected any part of SORNA as unconstitutional have all been reversed or overruled on the merits. See, e.g., United States v. Waybright, 561 F.Supp.2d 1154, 1168 (D.Mont.2008), overruled by United States v. George, 625 F.3d 1124, 1129 n. 2 (9th Cir.2010); United States v. Powers, *141 544 F.Supp.2d 1331, 1336 (M.D.Fla.2008), rev’d, 562 F.3d 1342, 1344 (11th Cir.2009) (per curiam); United States v. Guzman, 582 F.Supp.2d 305, 315 (N.D.N.Y.2008), rev’d, 591 F.3d 83, 89-91 (2d Cir.2010), cert. denied, — U.S. -, 130 S.Ct. 3487, 177 L.Ed.2d 1080, 1081 (2010); United States v. Hall, 577 F.Supp.2d 610, 623 (N.D.N.Y.2008), rev’d sub nom. United States v. Guzman, 591 F.3d at 89-91.
Of these various cases upholding SORNA, the Ninth Circuit’s decision in George is the one that directly addressed the issue presented by this appeal. The Ninth Circuit held that Congress acted within its powers, explaining that “SOR-NA’s registration requirements in [§ 2250(a)(2)(A) ] are valid based on the federal government’s ‘direct supervisory interest’ over federal sex offenders.” 625 F.3d at 1130 (quoting Carr, 130 S.Ct. at 2239).[5] While George, of course, does not bind us, “[w]e are always chary to create a circuit split,” Alfaro v. Comm’r, 349 F.3d 225, 229 (5th Cir.2003), absent a “persuasive reason” for doing so, United States v. Adam, 296 F.3d 327, 332 (5th Cir.2002).
Kebodeaux thus faces a high, though not insurmountable, hurdle to reversal: he must overcome the presumption of constitutionality we accord a federal statute and convince us to create a circuit split. In our assessment, Kebodeaux has not cleared this bar.
The arguments that Kebodeaux made in support of his position to the district court and in his initial briefing to our court focused on the Commerce Clause. As discussed above, SORNA makes it a federal offense, through § 2250(a)(2)(B), for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress’s power to regulate the channels of, and persons in, interstate commerce.[6] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues *142 only that § 2250(a)(2)(A) is unconstitutional because it is an invalid attempt by Congress to regulate intrastate activities, rather than interstate commerce.
Kebodeaux’s argument ignores the fact that § 2250(a)(2)(A) does not depend on the “interstate commerce” jurisdictional hook. That subsection expressly deals with persons convicted under federal sex offender statutes and is conspicuously lacking the interstate travel element of § 2250(a)(2)(B); this distinction is plainly intentional, see Carr, 130 S.Ct. at 2238. Federal sex offender statutes themselves are promulgated under various provisions of Article I. See, e.g., 18 U.S.C. § 2243(a) (criminalizing “sexual abuse of a minor or ward” in United States “special maritime and territorial jurisdiction”, pursuant to Congress’s Article I power “[t]o define and punish ... felonies committed on the high seas”). In the present case, Congress had the authority to enact Article 120 of the UCMJ, criminalizing sexual abuse of a minor by a member of the military, pursuant to its power to regulate the military under Article I, Section 8, Clause 14 of the United States Constitution.[7] Kebodeaux does not suggest that Congress lacked the authority to criminalize the conduct of which he was convicted or that the statute under which he was convicted was unconstitutional.
The question then becomes whether Congress’s power over federal sex offenses stretches far enough to encompass a registration requirement. The Necessary and Proper Clause of the Constitution gives Congress the power “[t]o make all laws which shall be necessary and proper for carrying into Execution” the enumerated powers. U.S. Const., art. I, § 8, cl. 18. Our analysis of this issue is governed by United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010).
In Comstock, the Court held constitutional a civil commitment statute for sexually-dangerous federal prisoners, 18 U.S.C. § 4248, under the Necessary and Proper Clause. Id. at 1954. The Court pointed to “five considerations” that supported the conclusion that the statute was constitutional:
(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in this arena, (3) the sound reasons for the statute’s enactment in light of the Government’s custodial interest in safeguarding the public from dangers posed by those in federal custody, (4) the statute’s accommodation of state interests, and (5) the statute’s narrow scope.
Id. at 1965. These five considerations must be part of our assessment here, but we note at the outset that these “considerations” are not factors to be balanced or that may cut for or against the constitutionality of a statute but rather an articulation of every reason supporting the Court’s conclusion that the civil commitment at issue in Comstock was constitutional. Comstock does not require that every one of these considerations be present in every case, nor does Comstock in any respect purport to overrule the Court’s prior decisional law. Rather, Comstock demonstrates the distillation and application of *143 existing law under the Necessary and Proper Clause to a particular statute.
As Comstock and the cases on which it relies make clear, two of the considerations — the first and third — are and have long been required in every case decided under the Necessary and Proper Clause: first, that the challenged statute must “constitute[ ] a means that is rationally related to the implementation of a constitutionally enumerated power,” id. at 1956 (citing M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819), and Sabri v. United States, 541 U.S. 600, 605, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004)); and, second, that the statute must similarly reflect a “ ‘means ... “reasonably adapted” to the attainment of a legitimate end under’ ” an enumerated power, id. at 1957 (quoting Gonzales v. Raich, 545 U.S. 1, 37, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Scalia, J., concurring) (quoting United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941))); see also id. at 1961 (“Moreover, § 4248 is ‘reasonably adapted’ to Congress’ power to act as responsible federal custodian (a power that rests, in turn, on federal criminal statutes that legitimately seek to implement constitutionally enumerated authority.” (quoting Darby, 312 U.S. at 121, 61 S.Ct. 451))). The remaining three considerations addressed in Comstock further inform rather than define the inquiry. See, e.g., id. at 1959 (‘We recognize that even a longstanding history of related federal action does not demonstrate a statute’s constitutionality. A history of involvement, however, can nonetheless be ‘helpful in reviewing the substance of a congressional statutory scheme.’ ” (internal citations omitted) (quoting Raich, 545 U.S. at 21, 125 S.Ct. 2195)).
We thus address the fundamental inquiry under the Necessary and Proper Clause, that is, the first and third Com-stock factors: is the challenged statute rationally related to an enumerated power and reasonably adapted to serve that end? On these questions, the Supreme Court’s decision in Carr offers, as the Ninth Circuit noted in George, useful guidance. In explaining why § 2250(a)(2)(B) should be read differently from § 2250(a)(2)(A), the Court held that
Congress ... chose to handle federal and state sex offenders differently. There is nothing “anomalous]” about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA’s registration requirements by federal sex offenders — persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA’s enactment, they use the channels of interstate commerce in evading a State’s reach.
... Congress in § 2250 exposed to federal criminal liability, with penalties of up to 10 years’ imprisonment, persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce.
130 S.Ct. at 2238-39; see also George, 625 F.3d at 1130 (quoting Carr, 130 S.Ct. at 2238, 2239). This quotation from Carr[8] *144 thus suggests that § 2250(a) makes SOR-NA applicable two categories of sex offenders for two distinct reasons: (1) state offenders who move across state lines and thus threaten to undermine the sex offender registration laws that every state has enacted, and (2) federal offenders — not because of any federal concern about their impact on or relationship to the nationwide registration scheme, but rather because of the distinct consideration of “the Federal Government's] direct supervisory interest” over former federal prisoners. Id. at 2239.[9] This logic traces the authority for § 2250, in Kebodeaux’s case, through the Necessary and Proper Clause back ultimately to the power to “make Rules for the Government and Regulation of the land and naval Forces.” U.S. Const., art. I, § 8, cl. 14. That is, inasmuch as Congress had the power to enact Article 120 of the UCMJ, Congress also has
the additional power to imprison people who violate th[at] ... law[ ], and the additional power to provide for the safe and reasonable management of those prisons, and the additional power to regulate the prisoners’ behavior even after their release. Of course, each of those powers, like the powers addressed in Sabñ, Hall, and McCulloch, is ultimately “derived from” an enumerated power.
Comstock, 130 S.Ct. at 1964 (quoting United States v. Hall, 98 U.S. 343, (8 Otto) 345 (1879)).
Kebodeaux argues that Comstock’s endorsement of Congress’s “power to regulate prisoners’ behavior even after their release,” id., refers only to the power to authorize probation and supervised release as part of a criminal sentence; he then contends that these powers are different in kind from the obligations imposed under SORNA because they are imposed at the time of the criminal judgment. This purported distinction conflates the question of the Article I power to impose an obligation with that of the limitations that the Ex Post Facto Clause, U.S. Const., art. I, § 9, cl. 3,[10] interposes. To be a permissible exercise of Congress’s powers, a law must of course both be authorized under Article I, § 8, and not be prohibited under Article I, § 9, or the various other provisions of and amendments to the Constitution that pose substantive limits on Congress’s power. See Comstock, 130 S.Ct. at 1956 (“The question presented is whether the Necessary and Proper Clause, Art. I, § 8, cl. 18, grants Congress authority sufficient to enact the statute before us. In resolving that question, we assume, but we do not decide, that other provisions of the Constitution — such as the Due Process Clause— do not prohibit [the law at issue].”). Supervised release must be imposed as part of criminal judgment because it is punitive, but our precedent holds^ — following the Su *145 preme Court — that the minimal reporting requirements under SORNA are not punitive within the meaning of the Ex Post Facto Clause. Young, 585 F.3d at 202-06 (citing Smith, 538 U.S. at 95, 123 S.Ct. 1140). Both, however, are post-release regulations of the behavior of former federal prisoners and derive from the same source of authority as an Article I, § 8 matter. That is, no one contests that Congress may impose some post-release obligations on a federal prisoner; this case simply presents the question of whether the fact that those regulations are, as SORNA’s are, non-punitive, civil collateral consequences — and thus not subject to Ex Post Facto Clause limitations — weakens that authority to the point of unconstitutionality. Kebodeaux offers no authority that it does, and we hold that it does not.
This analysis converges with the fifth Comstock consideration, the narrow scope of the challenged statute. That is, we need not “fear that our holding today confers on Congress a general ‘police power, which the Founders denied the National Government and reposed in the States.’” Comstock, 130 S.Ct. at 1964 (quoting Morrison, 529 U.S. at 618, 120 S.Ct. 1740). SORNA applies only to narrow, specific class of federal offenders who Congress has concluded present a high risk to the public — and imposes only them the non-punitive obligation that they provide basic registration information to state and local governments.[11] The law does not draw within its sweep all persons convicted of federal crimes, and it does not impose significant burdens on those to whom it applies. We need not, that is, even decide the question of whether Congress may permissibly establish non-punitive collateral consequences for all federal crimes— only sex offenses; and we may rely on the Ex Post Facto Clause to provide a separate outer boundary on the kinds of obligations that Congress may require. In short, this limited extension of federal authority is unlikely to devolve into the general police power that the Supreme Court has repeatedly cautioned does not rest with the federal government.
Turning to the second Comstock consideration — the history of federal action in the arena, we agree that federal sex offender registration laws are of relatively recent vintage. See Carr, 130 S.Ct. at 2232 (noting that federal sex offender registration laws date to 1994). However, we do not consider that “relatively recent vintage” to be dispositive, and the Court in Comstock did not make it so.
The fourth consideration, the extent of the statute’s accommodation of state interests, is addressed to some degree by our opinion in Johnson. We held there that SORNA as a whole poses no Tenth Amendment problem because the law imposes no actual mandate on the states: “While SORNA orders sex offenders traveling interstate to register and keep their registration current, SORNA does not require the States to comply with its directives. Instead, the statute allows jurisdictions to decide whether to implement its provisions or lose ten percent of their federal funding otherwise allocated for criminal justice assistance.” 632 F.3d at 920 (citing 42 U.S.C. § 16925(a)). By affording states the option to decline to comply *146 with the law’s specific requirements, SOR-NA provides some accommodation of state interests. Further, the subsection in question addresses the federal interest in a federal convict. See George, 625 F.3d at 1130.
We therefore read Comstock and Carr as supporting our holding that Congress had the authority under Article I of the Constitution to devise a narrow, non-punitive collateral regulatory consequence to this particular high-risk category of federal criminal convictions. Kebodeaux has failed to make the “plain,” Morrison, 529 U.S. at 607, 120 S.Ct. 1740, and “persuasive,” Adam, 296 F.3d at 332, showing we demand before overturning the considered judgment of the legislative and executive branches of the federal government and departing from that of the remainder of the judicial branch.

CONCLUSION

Accordingly, we conclude that § 2250(a)(2)(A)’s application to intra-state violations of SORNA by sex offenders convicted under federal law is constitutional. The judgment of the district court is AFFIRMED.

. 42 U.S.C. § 16913(a) provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.” 42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.”

. The Government also stated that it was not charging Kebodeaux under § 2250(a)(2)(B), for having traveled in interstate or foreign commerce or having entered an Indian reservation and knowingly having failed to update his registration.

. We have moreover reiterated and reaffirmed each of these holdings in a range of unpublished cases. See United States v. Byrd, No. 09-51108, 2011 WL 990304, at *4-5, 2011 U.S.App. LEXIS 5962, at *10-12 (5th Cir. Mar. 22, 2011) (following Heth and Whaley); United States v. Koch, 403 Fed.Appx. 917, 917 (5th Cir.2010) (following Whaley); United States v. Ross, 385 Fed.Appx. 364, 365 (5th Cir.2010) (following Heth and Whaley), cert. denied, - U.S. -, 131 S.Ct. 583, 178 L.Ed.2d 425 (2010); United States v. Marrufo, 381 Fed.Appx. 403, 404-05 (5th Cir.2010) (following Heth and Whaley); United States v. Contreras, 380 Fed.Appx. 434, 435-36 (5th Cir.2010) (following Heth and Whaley); United States v. McBroom, No. 09-50443, 2010 U.S.App. LEXIS 11113, at *3-4 (5th Cir. June 1, 2010) (following Heth and Whaley), cert. denied, - U.S. -, 131 S.Ct. 484, 178 L.Ed.2d 306 (2010); United States v. Slater, 373 Fed.Appx. 526, 527 (5th Cir.2010) (following Young)-, United States v. Knezek, No. 09-50438, 2010 WL 1655321, at *1, 2010 U.S.App. LEXIS 8585, at *2-3 (5th Cir. Apr. 26, 2010) (following Heth and Whaley); United States v. Letourneau, 342 Fed.Appx. 24, 26-27 (5th Cir.2009) (following Whaley), cert. denied, - U.S. -, 130 S.Ct. 1736, 176 L.Ed.2d 214 (2010); United States v. Puente, 348 Fed.Appx. 76, 77 (5th Cir.2009) (following Whaley), cert. denied, - U.S. -, 130 S.Ct. 1747, 176 L.Ed.2d 219 (2010).

. The Ninth Circuit had held that one portion of the regulations issued by the Attorney General under SORNA posed an Ex Post Facto Clause problem as to the narrow category of federally-adjudicated juvenile delinquents. See United States v. Juvenile Male, 590 F.3d 924 (9th Cir.2010). The Supreme Court, however, recently vacated that decision on mootness grounds without reaching the merits of the Ninth Circuit's ruling. United States v. Juvenile Male, No. 09-940, 2011 WL 2518925, at *3 (U.S. June 27, 2011).

. The district courts that have considered the question have likewise consistently held that § 2250(a)(2)(A) is constitutional. See United States v. Morales, 258 F.R.D. 401, 406 (E.D.Wash.2009), appeal docketed, No. 09-30344 (9th Cir. filed Sept. 23, 2009); United States v. Thompson, 595 F.Supp.2d 143, 145— 46 (D.Me.2009), aff'd on other grounds, No. 09-1946, 2011 WL 2163601, 2011 U.S.App. LEXIS 11408 (1st Cir. June 3, 2011) (unpublished); United States v. Yelloweagle, No. 08-cr-364, 2008 WL 5378132, at *1-2, 2008 U.S. Dist. LEXIS 105479, at *3-5 (D.Colo. Dec. 23, 2008), aff'd on other grounds, No. 09-1247, 2011 WL 1632095, 2011 U.S.App. LEXIS 8934 (10th Cir. May 2, 2011); United States v. Santana, 584 F.Supp.2d 941, 946-47 (W.D.Tex.2008), appeal docketed, No. 08-51226 (5th Cir. filed Dec. 5, 2008); United States v. Reeder, No. EP-08-CR-977, 2008 WL 4790114, 2008 U.S. Dist. LEXIS 105968 (W.D.Tex. Oct. 31, 2008), appeal docketed, No. 08-51212 (5th Cir. filed Nov. 26, 2008); United States v. Torres, 573 F.Supp.2d 925, 935-36 (W.D.Tex.2008), appeal docketed, No. 09-50204 (5th Cir. filed Mar. 16, 2009); United States v. Senogles, 570 F.Supp.2d 1134, 1147 (D.Minn.2008); see also United States v. David, No. 1:08-cr-11, 2008 WL 2045830, at *8-9, 2008 U.S. Dist. LEXIS 38613, at *26 n. 11 (W.D.N.C. May 12, 2008) (suggesting that § 2250(a)(2)(A) is constitutional in dicta), aff'd, 333 Fed.Appx. 726 (4th Cir.2009) (unpublished); United States v. Voice, 621 F.Supp.2d 741, 760 (D.S.D.2009) (holding that a sex offender convicted under federal law in Indian country and then residing in Indian country could be constitutionally convicted under § 2250(a)(2)(A)), aff'd, 622 F.3d 870 (8th Cir.2010), cert denied,- U.S. -, 131 S.Ct. 1058, 178 L.Ed.2d 875 (2011).

. Whaley, 577 F.3d at 258; accord George, 625 F.3d at 1129-30; Guzman, 591 F.3d at 90; United States v. Gould, 568 F.3d 459, 470-72 (4th Cir.2009), cert. denied, - U.S. -, 130 S.Ct. 1686, 176 L.Ed.2d 186 (2010); United States v. Ambert, 561 F.3d 1202, 1210— 11 (11th Cir.2009); United States v. May, 535 F.3d 912, 921-22 (8th Cir.2008).

. To the extent that the UCMJ applies to members of the National Guard when engaged in certain functions in federal service, see 10 U.S.C. § 802(a)(3), Article 120 likely also derives from Article I, § 8, clause 16, which authorizes laws "for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States.” In any event, as applied to Kebodeaux, at the time of his conviction a member of the regular armed forces of the United States, the relevant source of authority is clause 14.

. As quoted above, the prior paragraph to this sentence refers to federal prisoners "who typ *144 ically would have spent time under federal criminal supervision.” Id. at 2238 (emphasis added). Carr therefore does not distinguish between the federal government's interest in current and former prisoners; to the contrary, this language suggests that past federal criminal supervision can still be a basis for a sufficient present interest to permit the registration requirement at issue here.

. The language in Can- concerning § 2250(a)(2)(A) is not strictly part of the binding holding of the Court's opinion, but we are nevertheless hesitant to discard wholesale any portion of a recent Supreme Court decision discussing this very statute.

. As we noted in Young, there are in fact two clauses barring the federal government as well as the states "from enacting any law ‘which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed ....'” 585 F.3d at 202 (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1867)). Article I, § 9, clause 3, is the clause that restricts the federal government’s power.

. We recognize that SORNA is not as narrow in the scope of its application as is § 4248, see Comstock, 130 S.Ct. at 1964-65 (explaining that the law had only been applied to civilly commit 105 sexually-dangerous persons, and that the law did not extend to persons wholly released from federal custody), but the limited nature of the obligations SORNA imposes — notification and registration — contrasts sharply with the indefinite civil commitment in a Bureau of Prisons mental health facility that § 4248 authorizes so as to counterbalance SORNA’s more expansive reach.