HAYNES, Circuit Judge,
joined by KING, W. EUGENE DAVIS, CARL E. STEWART and LESLIE H. SOUTHWICK, Circuit Judges, dissenting:
I respectfully dissent. I would affirm Kebodeaux’s conviction.
I. The Original Challenge
I begin by addressing what we need no longer consider — a facial challenge to Section 2250(a)(2)(A)’s constitutionality. In the district court, Kebodeaux brought a broad-based challenge to Congress’s power to enact this section at all, largely focused on Commerce Clause concerns. Before the original panel, though mentioning the impact on him, Kebodeaux again largely confined his analysis to the overall alleged unconstitutionality of this section discussing both the “necessary and proper” basis and the Commerce Clause basis. His broad assertions that Congress lacked power to provide civil collateral consequences for federally-convicted offenders engendered the panel majority’s analysis of this power. Only in supplemental briefing before the en banc court did Kebodeaux’s argument begin to crystallize “solely” into an “as applied” challenge. Indeed, it was not until oral argument before the en banc court that Kebodeaux’s attorney finally conceded that Section 2250(a)(2)(A) could be constitutional “as applied” to certain classes of offenders, just not Kebodeaux, i.e., that Congress has a federal interest in the civil collateral consequences of federal offenses even when those civil consequences are not imposed as part of the original sentence for the offense.
The majority opinion continues in this vein, all but conceding that § 2250(a)(2)(A) is facially constitutional and declining to strike it down in its entirety, as Kebodeaux originally sought so long ago in district court. Maj. Op. at 234. Therefore, while I continue to stand by the panel majority opinion, 647 F.3d 137 (5th Cir.), vacated, 647 F.3d 605 (5th Cir.2011), I will not reprise it here (or further address the disagreements with it articulated by the majority opinion) beyond that necessary to address all that is left of the case — the as applied challenge centered on Kebodeaux. In doing so, however, I note the jurisprudential problems posed by an argument that changes from district court to panel to en banc and the relative lack of utility in deciding Kebodeaux’s case alone (not to mention the “narrow” group[1] in which he falls) as an en banc court. Respecting the right of my colleagues to address the present argument alone as an en banc court, I address the “as applied” argument below.
II. Section 2250(a)(2)(A) is Constitutional As Applied to Kebodeaux
A. The Analytical Process
Any discussion of the constitutionality of a statute must begin with the presumption of its constitutionality. See, e.g., United States v. Morrison, 529 U.S. 598, 608, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). As the majority opinion notes, the analysis “always starts with a heavy thumb on the scale in favor of upholding government *264 action.” Maj. Op. at 236-37. The basic analysis focuses on whether the challenged statute “constitutes a means that is rationally related to the implementation of a constitutionally enumerated power,” United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 1956, 176 L.Ed.2d 878 (2010) (citing M’Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819), and Sabri v. United States, 541 U.S. 600, 605, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004)); and, that the statute must reflect a “ ‘means ... ‘reasonably adapted’ to the attainment of a legitimate end under’ ” an enumerated power, id. at 1957 (quoting Gonzales v. Raich, 545 U.S. 1, 37, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Scalia, J. concurring)); see also id. at 1961 (“Moreover, § 4248 is ‘reasonably adapted’ to Congress’ power to act as a responsible federal custodian (a power that rests, in turn, on federal criminal statutes that legitimately seek to implement constitutionally enumerated authority).” (citation omitted)).
Starting with a presumption of constitutionality, Congress has “broad authority” to enact laws that are rationally related to enumerated powers. Id. at 1957. The majority opinion is right to distinguish this inquiry from due process and equal protection rational-basis scrutiny, but that distinction by no means lowers the high hurdle that Kebodeaux faces. See id. (“ ‘The Constitution ... leaves to Congress a large discretion as to the means that may be employed in executing a given power.’ ” (quoting Lottery Case, 188 U.S. 321, 355, 23 S.Ct. 321, 47 L.Ed. 492 (1903))); see also Morrison, 529 U.S. at 607, 120 S.Ct. 1740 (“[Courts may] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds.”). Further, the Comstock Court outlined the sometimes distant and indirect relationship between an enumerated power and a properly enacted statute implemented in furtherance of the Necessary and Proper Clause:
Neither Congress’ power to criminalize conduct, nor its power to imprison individuals who engage in that conduct, nor its power to enact laws governing prisons and prisoners, is explicitly mentioned in the Constitution. But Congress nonetheless possesses broad authority to do each of those things in the course of “carrying into Execution” the enumerated powers “vested by” the “Constitution in the Government of the United States,” Art. I, § 8, cl. 18 — authority granted by the Necessary and Proper Clause.
130 S.Ct. at 1958. This statement provides the framework for any Necessary and Proper Clause analysis.
With this general background in mind, I turn to the matter at hand. Perhaps much of the disagreement between the majority opinion and the panel majority opinion is in the framing of the issue. The majority opinion posits that Congress in enacting Section 2250(a)(2)(A), and the Government in prosecuting Kebodeaux under it, seek to “assert unending criminal authority” over convicted federal sex offenders. If this premise were true, I would agree with the majority opinion that Congress has exceeded its authority — albeit under the Ex Post Facto Clause. However, because SORNA’s registration requirements are civil in nature, as the majority opinion itself notes repeatedly (see, e.g., Maj. Op. at 238 n. 17), Congress appropriately exercised its power to prescribe civil collateral consequences of a federal crime pursuant to the Necessary and Proper Clause.
B. Even under the Majority Opinion’s Test, Kebodeaux’s Conviction is not Unconstitutional
The thrust of the majority opinion’s analysis focuses on the “jurisdictional *265 hook” needed for Congress to impose civil registration requirements on a prisoner convicted of a federal crime. The majority opinion concedes that Congress may place conditions on a federal prisoner’s release from custody, or even impose sex-offender registration requirements on anyone under federal government supervision, even if those requirements were not expressly included as part of the prisoner’s sentence. When a federal prisoner, however, is “unconditionally released,” the majority opinion posits that the federal government forfeits its ability to impose civil collateral consequences for that federal crime, here, molesting a young teenager. Therefore, the majority reasons that because Kebodeaux was “unconditionally released” prior to SORNA’s enactment, Congress has no authority to require him to register under the Act. Ultimately, the majority opinion contends that “SORNA’s registration requirements are civil and were enacted after Kebodeaux committed his crime,” Maj. Op. at 239 (emphasis added), and that Congress cannot “pass a law to protect society from someone who was once in prison but seven years ago had fully served his sentence and had not since been in contact with the federal government.” Maj. Op. at 240. In other words, Congress must “strike while the iron is hot.”
Assuming arguendo that the majority opinion’s premise is correct — that Congress must enact a civil collateral consequence statute while the particular federal offender regulated is still within the federal government’s grasp — Congress did so. The federal government seized and never relinquished its registration authority over Kebodeaux from 1999 to the present. As the majority opinion concedes, “federal law relating to sex-offender registration [has existed] since 1994.” Maj. Op. at 238. All agree that Kebodeaux was convicted in 1999 of a crime committed that same year. Thus, to the extent Congress must strike while the iron is hot, I will next examine how it did so.
The premise of the majority opinion’s jurisdictional analysis stems from the fact that SORNA was implemented after Kebodeaux’s release, allegedly leaving a gap in jurisdiction that prevents the federal government from regulating civil consequences of his conviction pursuant to the Necessary and Proper Clause. The majority opinion and Kebodeaux (through concessions by counsel at oral argument) agree, however, that if SORNA had been implemented while Kebodeaux was in custody or subject to supervised release, then this argument would not apply.
Kebodeaux was, in fact, continuously subject to federal registration authority from the time of his release through SORNA’s inception (and thereafter).[2] In 1994, Congress enacted the Wetterling Act, which subjected certain sex offenders to registration requirements through a state-based registration system. See 42 U.S.C. § 14071, repealed by SORNA § 129, Pub.L. 109-248, § 129, 120 Stat. 600 (2006). The Wetterling Act required states to meet minimum requirements in order to receive federal criminal justice funds. Id. In 1996, Congress enacted the Pam Lychner Act, which retained the Wet *266 terling Act’s minimum ten-year registration requirement for sex offenders but expanded lifetime registration requirements to a broader swath of offenders. See id. § 14072, repealed by SORNA. The Lychner Act also enhanced federal involvement in the registration process, creating a national database designed to allow the FBI to track registrants and to provide a mechanism for registration where offenders resided in states that chose not to comply with the Wetterling Act. Id. In addition, the Lychner Act created a federal criminal penalty for certain offenders’ failure to register. Id. § 14072(f); Wayne A. Logan, Criminal Justice Federalism and National Sex Offender Policy, 6 Ohio St. J.Crim. L. 51, 72 (2008); United States v. Smith, 481 F.Supp.2d 846, 847-51 (E.D.Mich.2007) (concluding that although § 2250 did not apply to a defendant’s preSORNA offense, defendant was subject to federal misdemeanor for failing to register pursuant to the Lychner Act).[3] The next year, the Jacob Wetterling Improvements Act extended registration requirements to certain federal and military offenders. See Pub.L. No. 105-277, 112 Stat. 2440; 42 U.S.C. § 14072®.
In 1999, Kebodeaux was convicted under Article 120 of the United States Code of Military Justice for one count of carnal knowledge involving a minor. This offense invoked the Lychner Act’s federal registration requirement. Section 14072® required registration by any person “described in section 4042(c) of title 18.” 42 U.S.C. § 14072(i)(3) (effective Oct. 21,1998 to July 26, 2009). Section 4042(c) included persons convicted of an “offense designated by the Attorney General as a sexual offense for purposes of this subsection.” 18 U.S.C. § 4042(c)(4)(E), repealed by SORNA (effective through July 27, 2006). Accordingly, the Attorney General designated as a sexual offense for purposes of § 4042(c), the military sex offense that Kebodeaux later committed: “Uniform Code of Military Justice ... 120B1/2 (Carnal knowledge).” 28 C.F.R. § 571.72(b)(2); see Designation of Offenses Subject to Sex Offender Release Notification, 63 Fed. Reg. 69,386 (Dec. 16,1998).[4]
Regardless of the state in which Kebodeaux chose to reside after his release, he was required to register for at least ten years. If he lived in a state that complied with the Wetterling Act’s minimum requirements, then Kebodeaux was required to register with that state. See 42 U.S.C. §§ 14071(b)(6) — (7), 14072(i)(3).[5] If, howev *267 er, he lived in a state that was not minimally compliant, Kebodeaux was required to register with the FBI. Id. § 14072(c)-(d), (g)(2), (i). At the time of his original conviction, Kebodeaux’s “fail[ure] to register in [the] State in which [he] reside[d],” (or with the FBI, if he was in a non-minimally compliant state) was punishable for a first offense, of imprisonment “for not more than 1 year[6] and, in the case of a second or subsequent offense under [14072(i) ], ... not more than 10 years.” Id. § 14072(i)(l), (3) — (4); see United States v. Mantia, No. 07-60041, 2007 WL 4730120, *1, 6 n. 5 (W.D.La. Dec. 10, 2007) (unpublished).[7]
The Wetterling and Lychner Acts were folded into and repealed as standalone acts on July 27, 2006,[8] in an effort to further expand and unify national sex registration requirements. Reynolds v. United States, — U.S. -, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012).[9] Until SORNA’s implementation (and continuing thereafter), Kebodeaux had been continuously subject to federal registration requirements of some sort. Though Kebodeaux challenges SORNA, using the majority opinion’s reasoning, the federal government never gave up — or lost — its “jurisdictional hook” over Kebodeaux. The majority opinion’s reasoning is based on a straightforward syllogism: The federal government loses its right to enact civil collateral consequences over a federal inmate once the inmate is unconditionally released from its supervision; Kebodeaux was released from prison before SORNA’s enactment; thus, the federal government no longer had federal jurisdiction over Kebodeaux when it convicted him for failing to register under SORNA. Even if we assume for the sake of argument that the majority opinion’s jurisdictional premise is correct, Congress exercised “jurisdiction” over Kebodeaux while he was still subject to federal restrictions. That one statute has been folded into another does not alter this assertion of civil “power” and “jurisdiction” over Kebodeaux as a convicted federal sex offender. Kebodeaux was always required to *268 register under federal law; the federal government never gave up its “federal” interest in Kebodeaux as a convicted federal sex offender.
It is undisputed that SORNA revamped prior federal registration requirements. Reynolds, 132 S.Ct. at 978. SORNA is a broader scheme that applies to a greater number of sex offenders than the prior Acts. See 42 U.S.C. § 16911(5)-(8).[10] In passing it, Congress sought to make prior sex offender registration schemes “more comprehensive, uniform, and effective.” Carr v. United States, — U.S. - — , 130 S.Ct. 2229, 2232, 176 L.Ed.2d 1152 (2010). SORNA thus mandates more comprehensive registration information and stringent check-in protocols. See id. § 16914. Moreover, prior to SORNA’s passage, initial violations of federal registration requirements only constituted a misdemean- or offense, see 42 U.S.C. § 14072®, while SORNA makes failure to register a felony punishable by up to ten years in prison, see 18 U.S.C. § 2250. Undoubtedly, then SORNA made important changes to the scheme previously in place.
For purposes of addressing the majority opinion’s analysis, however, SORNA’s broad applicability compared to prior law is of no relevance. If this challenge is “as-applied,” as Kebodeaux now asserts, then the crux of the matter as defined by the majority opinion is whether the federal government had asserted jurisdiction to require civil registration over Kebodeaux as a convicted federal sex offender when it had him in its grasp, not whether the two statutes are exactly congruent.[11] Because Kebodeaux was indeed subject to federal registration requirements at the time of his release from prison under the Wetter-ling and Lychner Acts and thereafter under SORNA, the “jurisdictional hook” is not an issue. It makes little sense to contend that Congress lost its power or “jurisdictional hook” over Kebodeaux simply because it updated the national sex-offender registration system laws.
I see no reason to distinguish the jurisdiction (as a matter of federal power) exercised over Kebodeaux under SORNA from that exercised under its predecessor sex offender registry laws that applied to Kebodeaux. Therefore, if we are to assume that Kebodeaux’s conviction would be constitutional had SORNA been enacted while he was in prison or on supervised release, then his conviction is constitutional given the continuous federal jurisdiction Congress exercised over Kebodeaux from the time he committed his original sex crime, through his imprisonment, at the time of his release, through SORNA’s passage, and to the present day.
In sum, Congress did “strike while the iron was hot,” at least as to federal sex offender Kebodeaux, who was convicted when SORNA’s predecessors were in place *269 and imposed the basic requirement to register as to which Kebodeaux later ran afoul. Kebodeaux’s “as-applied” challenge, therefore, should fail, and the conviction should be affirmed. From the majority opinion’s failure to do so, I respectfully dissent.

. As posited by the majority opinion, this “narrow group” presumably consists of federal sex offenders released from prison and supervised release before SORNA's enactment who do not travel in interstate commerce after its enactment.

. Pertinent to the conviction from this appeal is taken, Kebodeaux was aware at the time in question of the need to register as a sex offender and does not contend confusion about the need to do so after SORNA's passage. Nor does he contend some inability to comply. In this case, he stipulated that he moved from San Antonio, Texas to El Paso, Texas in August of 2007 and reported to the El Paso police department to file the necessary registration forms. At that time, he acknowledged knowledge of the registration requirements. Thereafter, he moved back to San Antonio without re-registering. That failure to register triggered the prosecution underlying this conviction.

.See also United States v. Tones, 573 F.Supp.2d 925, 932 (W.D.Tex.2008) (“While the Act primarily was regulatory in nature, similar to SORNA, the Wetterling Act also provided criminal penalties of up to one year for a first offense, and up to ten years for subsequent offenses, for sex offenders who failed to register in any state they resided, worked or were a student.”); United States v. Hinen, 487 F.Supp.2d 747, (W.D.Va.2007) ("The Jacob Wetterling Act of 1994 directly imposes registration requirements on certain classes of sex offenders, and the defendant is included within this class.... Regardless of the applicability of SORNA to the defendant, as of the dates in question, the nature of his conviction required him, under a long-standing federal law, to register in his state of residence and any other state where he was employed, carried on a vocation, or was a student.”), reversed on other grounds by United States v. Hatcher, 560 F.3d 222 (4th Cir.2009).

. The Department of Justice's guidance on sex-offender release notification designated "UCMJ offenses ... [to make] clear that persons convicted of military offenses in pertinent categories are persons described in 18 U.S.C. § 4042(c)(4) for all purposes, including post-release change of address notice by federal probation officers for persons under their supervision pursuant to section 4042(c)(2).” 63 Fed.Reg. 69,386.

. 42 U.S.C. § 14071(b)(7) required "minimally compliant” states to establish procedures to accept registration information from residents convicted of federal offenses.

. Based on this section, the concurring opinion filed by Judge Owen suggests that the sentence was unconstitutional. In the briefing before our court, Kebodeaux has never separately challenged his sentence; instead, he has sought only vacatur of his conviction. This is probably because by the time his appellate brief was filed, he had already been released from confinement such that any appeal of the sentence of confinement is moot. United States v. Rosenbaum-Alanis, 483 F.3d 381, 382 (5th Cir.2007).

. The majority opinion's contention that Kebodeaux’s residence in a minimally compliant state immunized him from federal requirements is incorrect. Maj. Op. at 235 n. 4. Whether a state was minimally compliant or not affected where Kebodeaux was to register but not whether he had to register. Therefore, Kebodeaux's location in a minimally compliant state did not impact the fact that he was subject to federal penalties for failure to register. See 42 U.S.C. § 14072(i)(3) (applying a federal penalty to particular federal offenders that "knowingly fail[] to register in any State in which the person resides ..." (emphasis added)).

. The Adam Walsh Act made clear, however, that the effective date of the repeal of predecessor registry programs would not take effect until at least July 27, 2009. See Pub.L. 109-248, §§ 124, 129, 120 Stat. 598, 600-01; see also Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38030, 38035 (July 2, 2008) (noting that the Wetterling Act would be repealed “upon completion of implementation period for SORNA”).

. Reynolds addressed the narrow question of when and how SORNA's particular requirements become effective as to persons who committed their offense prior to its enactment. It does not address Congress’s power to prescribe registration requirements for those offenders.

. SORNA was enacted to create a "comprehensive national system for the registration of sex offenders by creating a new set of standards for the states' Megan's Laws and imposing registration obligations on sex offenders. The SORNA reforms were designed to 'close potential gaps under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs.' ” United States v. Simington, 2011 WL 145326, at *3 (W.D.Tex. Jan. 14, 2011) (internal citations omitted). Assuming arguendo the correctness of the majority’s analysis, the situation might be different if Kebodeaux fell in one of those "gaps” preSORNA that was filled by SORNA. But that's not the case.

. Again assuming arguendo the validity of the majority opinion’s analysis, the situation could be different if SORNA had fundamentally altered Kebodeaux’s requirements by imposing some brand new obligation fundamentally different from registration. But Kebodeaux's basic requirement of registration stayed the same.