FILED
United States Court of Appeals
Tenth Circuit

December 30, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

FRANKLIN CAREL, JR.,

      Defendant - Appellant.

No. 10-1095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:09-CR-00133-WYD-1)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

Michael C. Johnson, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Colorado, Denver, Colorado, appearing for Appellee.

---

Before **GORSUCH, ANDERSON,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

In 2010, Defendant-Appellant Franklin Carel, Jr., a federally adjudicated sex offender, was convicted of knowingly failing to update his sex offender registration as

required by the Sex Offender Registration and Notification Act ("SORNA"). On appeal,

he contends that SORNA's sex offender registration provision, 42 U.S.C. § 16913, is

unconstitutional. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we hold that as

applied to Mr. Carel—a federal sex offender on supervised release—§ 16913 is a

constitutional exercise of Congress's authority under the Necessary and Proper Clause.

## I. BACKGROUND

### A. *Substantive Background*

#### 1. *SORNA: History and Framework*

"In the years prior to SORNA's enactment, the Nation had been shocked by cases

in which children had been raped and murdered by persons who, unbeknownst to their

neighbors or the police, were convicted sex offenders." *Carr v. United States*, 130 S. Ct.

2229, 2249 (2010) (Alito, J., dissenting). In response to these events, "Congress and state

legislatures passed [several] laws requiring the registration of sex offenders." *Id.* One

such law was the federal Jacob Wetterling Crimes Against Children and Sexually Violent

Offender Registration Act (the "Wetterling Act"), Pub. L. 103-322, Tit. XVII,

§ 170101(c), 108 Stat. 2041.[1]

Despite federal and state efforts to monitor convicted sex offenders, approximately

100,000 sex offenders—nearly one-fifth of the United States' total sex offender

---

[1]"Under the Wetterling Act, states were given three years to establish a sex offender registration program in compliance with the Act or forfeit 10 percent of federal funding for a state and local law enforcement assistance program." *United States v. Begay*, 622 F.3d 1187, 1189 (9th Cir. 2010). "The Wetterling Act required convicted sex offenders to register their addresses with states." *Id.* The Wetterling Act was replaced by the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 129(a), 120 Stat. 587, which contains more specific sex offender registration requirements.

population—remained unregistered in 2005. *See* H. R. Rep. No. 109-218, pt. 1, p. 26 (2005). In July 2006, Congress enacted the Adam Walsh Child Protection and Safety Act (the "Walsh Act"), Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006). Title I of the Walsh Act established SORNA. *See id.*

"SORNA was enacted to succeed and enhance the registration requirements of the Wetterling Act," *United States v. Begay*, 622 F.3d 1187, 1190 (9th Cir. 2010), and to eliminate "a dangerous gap in the then-existing sex-offender-registration laws." *Carr*, 130 S. Ct. at 2249 (Alito, J., dissenting); *see also United States v. Yelloweagle*, 643 F.3d 1275, 1277 (10th Cir. 2011) (noting that SORNA was enacted based on Congress's "conclusion that existing sex offender registration and reporting requirements were too readily circumvented").

The declared purpose of SORNA is "to protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. To accomplish this objective, SORNA established a national database, *see* 42 U.S.C. § 16919(a), "[i]ntended as a means of preventing sex offenders from evading their registration requirements by crossing state lines." *United States v. Lawrance*, 548 F.3d 1329, 1334 (10th Cir. 2008); *see also Carr*, 130 S. Ct. at 2240 (noting that SORNA was "enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks").

SORNA includes civil and criminal components. Its civil component—42 U.S.C. § 16913—states: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the

3

offender is a student." SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense." *Id.* at 16911(1). Section 16913 "requires all sex offenders to register [and to keep their registrations current], regardless of whether their convictions are based on federal or state law." *Yelloweagle*, 643 F.3d at 1276; *see also Begay*, 622 F.3d at 1187 (noting that § 16913 imposes "two separate obligations—an obligation to register and an obligation to keep the registration current"). To ensure such compliance, 18 U.S.C. § 3583(d) requires federal district courts to "order, as an explicit condition of supervised release for a person required to register under [SORNA], that the person comply with the requirements of that Act." Thus, for all persons convicted of a federal sex offense after SORNA's enactment, the registration requirements contained in § 16913 are a mandatory component of their supervised release. *See id.*

SORNA's criminal provision—18 U.S.C. § 2250(a)—imposes criminal penalties for failure to comply with § 16913's registration requirements. Section 16913 "applies to all sex offenders regardless of whether their convictions arise under federal or state law." *Yelloweagle*, 643 F.3d at 1278. By contrast, § 2250(a) "imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: (1) any person who is a sex offender by reason of a conviction under federal law, and (2) any other [sex offender] who travels in interstate or foreign commerce." *Carr*, 130 S. Ct. at 2238 (quotations and citations omitted). Persons convicted of state sex crimes "who never leave the state in which they were convicted" are not subject to criminal penalties under § 2250(a). *Yelloweagle*, 643 F.3d at 1278.

4

## 2. *SORNA: Tenth Circuit Litigation*

In the years since its passage, the Tenth Circuit has rejected numerous constitutional challenges to SORNA. The court has held that § 16913—SORNA's registration provision—does not violate the Due Process Clause, the nondelegation doctrine, or the Ex Post Facto Clause. *See, e.g.*, *Lawrance*, 548 F.3d at 1333-34; *United States v. Hinckley*, 550 F.3d 926, 935-40 (10th Cir. 2008). We also have held that Congress acted within its authority under the Commerce Clause in enacting § 2250(a)(2)(B)—SORNA's criminal provision applicable to sex offenders who fail to register and travel in interstate or foreign commerce. *See Lawrance*, 548 F.3d at 1337; *Hinckley*, 550 F.3d at 940.

Most recently, we held that Congress acted within its authority under the Necessary and Proper Clause when it enacted § 2250(a)(2)(A)—SORNA's criminal provision that applies to federal sex offenders, including those who do *not* travel interstate. *See Yelloweagle*, 643 F.3d at 1289.[2] We reached this conclusion based on the assumption that § 16913—SORNA's registration provision—was constitutional. *See id.* Specifically, we stated: "[O]perat[ing] on the assumption that § 16913 is a valid exercise of Congress's power under the Commerce Clause . . . we conclude that Congress has the authority under the Necessary and Proper Clause to enact § 2250(a)(2)(A) in order to criminally enforce its validly enacted registration provision, § 16913." *Id.* We assumed

---

[2]On appeal, Mr. Carel asserts a facial challenge to the constitutionality of § 2250(a)(2)(A), but this challenge is foreclosed by our decision in *Yelloweagle*.

5

§ 16913 was valid because the defendant-appellant "waived his challenge to § 16913."

*Id.*

Despite all the constitutional challenges to SORNA that have been asserted in the Tenth Circuit, we have not expressly addressed whether Congress acted within the scope of its authority when it required federal sex offenders to comply with § 16913's registration requirements.[3]

---

[3]Two other circuits—the Fifth and the Ninth—have directly addressed the constitutionality of applying § 16913 to federal sex offenders. *See United States v. Kebodeaux*, 647 F.3d 137 (5th Cir. 2011) (en banc opinion pending); *United States v. George*, 625 F.3d 1124 (9th Cir. 2010). Although they offered different reasons for doing so, both circuits upheld § 16913 as a constitutional exercise of Congress's legislative authority. *See Kebodeaux*, 647 F.3d at 146 ("Congress had the authority under Article I of the Constitution to devise a narrow, non-punitive collateral regulatory consequence to this particular high-risk category of federal criminal convictions. . . . Accordingly, we conclude that [SORNA's] application to intra-state violations . . . by sex offenders convicted under federal law is constitutional."); *George*, 625 F.3d at 1130 ("SORNA's registration requirements are valid based on the federal government's direct supervisory interest over federal sex offenders." (quotations omitted)).

Additionally, although they have not addressed application of § 16913 to federal sex offenders who do not cross state lines, at least six other circuits have concluded that § 16913 is constitutional. *See United States v. Pendleton*, 636 F.3d 78, 88 (3d Cir. 2011) ("Section 16913 is a law made in pursuance of the constitution, because it is necessary and proper for carrying into Execution Congress's power under the Commerce Clause." (quotations and citations omitted)); *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010) ("To the extent that § 16913 regulates solely intrastate activity, its means are reasonably adapted to the attainment of a legitimate end under the commerce power, and therefore proper." (quotations and citations omitted)); *United States v. DiTomasso*, 621 F.3d 17, 25 n.8 (1st Cir. 2010) ("The defendant suggests that the registration requirement contained in § 16913 itself exceeds Congress's power under the Commerce Clause. This suggestion is incorrect. The Necessary and Proper Clause . . . provides Congress with ample authority to regulate local activity as part of a general scheme regulating interstate commerce."); *United States v. Vasquez*, 611 F.3d 325, 331 (7th Cir. 2010) ("[Section] 16913 is a logical way to help ensure that the government will more effectively be able to track sex offenders when they do cross state lines. To the extent that § 16913 regulates solely intrastate activity, the regulatory means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power."); *United States v. Howell*,

**B.** *Factual Background and Procedural History*

In 2006, Mr. Carel, then 22 years old, impregnated his 14-year-old girlfriend. Both Mr. Carel and his girlfriend lived on Colorado's Southern Ute Indian Reservation. The pregnancy eventually came to the attention of the Southern Ute Social Services Department.

In January 2008, Mr. Carel was charged with one count of sexual abuse of a minor in Indian country in violation of 18 U.S.C. § 2243(a)[4] and 18 U.S.C. § 1153.[5] In August 2008, he pled guilty to the charge. A federal district court sentenced Mr. Carel to time served and to three years of supervised release. One of the conditions of his supervised release is that he "comply with the requirements of [SORNA] as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency [in any state in which] he . . . resides, works, or is a student." Aplt. App. Vol. I, at 44.

---

552 F.3d 709, 715 (8th Cir. 2009) ("[A]n analysis of § 16913 under the broad authority granted to Congress through both the commerce clause and the enabling necessary and proper clause reveals the statute is constitutionally authorized."); *United States v. Ambert*, 561 F.3d 1202, 1212 (11th Cir. 2009) ("Section 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause. The requirement that sex offenders register under § 16913 is necessary to track those offenders who move from jurisdiction to jurisdiction.").

[4] 18 U.S.C. § 2243(a) criminalizes "knowingly engag[ing] in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging . . . ."

[5] 18 U.S.C. § 1153 states: "Any Indian who commits . . . felony child abuse or neglect . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

7

On December 19, 2008, Mr. Carel met with a federal probation officer and signed a document titled "Conditions of Probation and Supervised Release." By signing the document, Mr. Carel agreed to "register as a sex offender in any state where [he] resides, is employed, carries on a vocation, or is a student." *Id.* at 52.

Mr. Carel moved to Bayfield, Colorado to live with a family friend some time in December 2008. On December 24, 2008, he registered as a sex offender in Colorado. His sex offender registration form indicated that he was required to re-register quarterly and that his next registration date was March 24, 2009. Mr. Carel did not re-register on that date.

On March 24, 2009, a federal grand jury indicted Mr. Carel for failure to update his sex offender registration in Colorado. At the time of his indictment, Mr. Carel remained on supervised release for his original conviction for sexual abuse of a minor in Indian country. The March 24, 2009 indictment stated that Mr. Carel, "a person who was required to register under [SORNA], and a sex offender by reason of a conviction under [f]ederal law, did knowingly fail to update his registration as required by law . . . in violation of 18 U.S.C. § 2250(a)." *Id.* at 5. The district court issued an arrest warrant based on the indictment. On May 1, 2009, authorities arrested Mr. Carel pursuant to the warrant in the state of Arizona.[6]

---

[6]Although Mr. Carel was arrested in Arizona and could possibly have been prosecuted under § 2250(a)(2)(B)—SORNA's criminal provision applicable to sex offenders who fail to register and travel in interstate or foreign commerce—the Government chose to prosecute him under § 2250(a)(2)(A).

On June 23, 2009, Mr. Carel filed a motion to dismiss his indictment, arguing that SORNA's registration provision is unconstitutional. The district court rejected his argument and denied his motion.

On March 17, 2010, Mr. Carel entered a conditional guilty plea, preserving his right to appeal the district court's denial of his motion to dismiss. The district court sentenced him to 15 months of imprisonment to be followed by three years of supervised release.

Mr. Carel filed a timely notice of appeal challenging the district court's rejection of his motion to dismiss.[7]

## II. ANALYSIS

On appeal, Mr. Carel contends that "[t]he registration requirement of . . . § 16913 is unconstitutional as applied to federally adjudicated sex offenders." Aplt. Br. at 24. Specifically, he argues that Congress exceeded the scope of its authority under the Commerce Clause by requiring federal sex offenders who do not cross state lines to comply with § 16913. He further argues that application of § 16913 to federal sex offenders is not a proper exercise of Congress's authority under the Necessary and Proper Clause.

----

[7]In his opening brief, Mr. Carel addressed two issues. First, he contended he "is not guilty . . . of violating 18 U.S.C. § 2250 because he was not in fact required by SORNA to update his registration after only three months." Aplt. Br. at 11. Second, he argued "[t]he Constitution does not grant Congress the authority to enact the civil registration requirement of SORNA (42 U.S.C. § 16913-16916)." *Id.* at 23. However, in his reply brief, Mr. Carel abandoned the first issue raised in his opening brief. We therefore address only his second issue.

In response, the Government argues that § 16913 is a valid exercise of Congress's authority to regulate "persons . . . in interstate commerce." Aple. Br. at 39. Alternatively, it argues that, even if the Commerce Clause does not authorize Congress to require federal sex offenders to comply with SORNA's registration requirements, the Necessary and Proper Clause provides it with such authority.

In reviewing the constitutionality of § 16913, our review is de novo. *See United States v. Plotts*, 347 F.3d 873, 877 (10th Cir. 2003). We must, however, presume that the statute is constitutional. *See id.* ("We review challenges to the constitutionality of a statute de novo . . . . Statutes are presumed constitutional." (quotations and citations omitted)); *see also Gillmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007) ("As a general matter, we give all statutes a presumption of constitutionality."). The Supreme Court has instructed that "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

With this presumption of constitutionality in mind, we turn to whether Congress exceeded the scope of its authority under Article I, § 8 of the Constitution by requiring Mr. Carel to register as a sex offender. Based on Congress's authority to enact Mr. Carel's original statute of conviction (sexual abuse of a minor in Indian country) and its power to create civil penalties and regulations for persons convicted of violating that statute under the Necessary and Proper Clause, we hold that Congress did not exceed the scope of its authority by requiring Mr. Carel—a federal sex offender on supervised

10

release—to register as a sex offender.  We therefore need not and do not review § 16913's constitutionality under the Commerce Clause.

We begin our analysis by addressing the scope of Mr. Carel's constitutional challenge to § 16913.  After determining that Mr. Carel's challenge to § 16913 is an as-applied challenge, we address the merits of his claim.

## A.  *The Scope of Mr. Carel's Claim*

"Our first task in resolving [Mr. Carel's challenge] is to determine the contours of [his] claim."  *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1339 (2010).  An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both.  *See, e.g.*, *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008).  "A facial challenge is a head-on attack [of a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications."  *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007).

In contrast, "[a]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the *particular circumstances* of the case."  *Id.* (emphasis added); *see also New Mexico Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) ("[An] 'as-applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to [particular parties].").

"The nature of a challenge depends on how the *plaintiffs* elect to proceed—whether they seek to vindicate their own rights based on *their own circumstances* (as-applied) or whether they seek to invalidate a[] [statute] based on how it affects them *as well as other conceivable parties* (facial)." *Scherer v. United States Forest Serv.*, 653 F.3d 1241, 1245 (10th Cir. 2011) (second and third emphases added).

Mr. Carel's claim that § 16913 is unconstitutional has characteristics of both a facial and as-applied challenge. It has characteristics of a facial challenge to the extent that "it is not limited to the [facts of his] particular case," *Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010), and seeks to challenge the application of § 16913 to *all* persons convicted of a federal sex offense. *See id.* It has characteristics of an as-applied challenge "in the sense that it does not seek to strike down [§ 16913] in all its applications." *Id.*

Although the nature of Mr. Carel's challenge is not entirely clear from his briefing or the decision below, at oral argument his counsel stated that his challenge to § 16913 is an as-applied challenge: "Our challenge is an as-applied challenge to the registration provisions. That is because this court in *Lawrance* and other circuits have held that the registration requirement is constitutional . . . as applied to those that travel in interstate commerce. So, th[is] is an as-applied challenge that we're making to [§ 16913]." Oral Argument at 00:50-02:00. Counsel for the Government agreed. *See id.* at 15:38-16:01. We therefore address the merits of Mr. Carel's claim consistent with that characterization. *See, e.g.*, *Milavetz,* 130 S. Ct. at 1339 ("Although the nature of its challenge is not entirely clear from the briefing or decisions below, counsel . . . insisted

at oral argument that this is . . . an as-applied challenge . . . . We will approach the question consistent with [counsel's] characterization." (quotations and citations omitted)).

Because we construe Mr. Carel's challenge to § 16913 as an as-applied challenge, we address only whether applying § 16913 to the particular circumstances of his case violates the Constitution and we express no opinion concerning whether § 16913 might violate the Constitution as it applies to other federal sex offenders. *Cf. Pruitt*, 502 F.3d at 1171; *see also Colorado Right to Life Comm., Inc. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007) ("[A]n as-applied challenge tests the application of [a statute] to the facts of a plaintiff's concrete case."). Accordingly, we determine only whether Congress exceeded the scope of its authority by requiring Mr. Carel—a federal sex offender on supervised release—to register as a sex offender.

## B. The Merits of Mr. Carel's As-Applied Challenge to § 16913

### 1. The Necessary and Proper Clause

"The federal government is acknowledged by all to be one of enumerated powers." *United States v. Comstock*, 130 S. Ct. 1949, 1956 (2010) (quotations omitted). Thus, "[e]very law enacted by Congress must be based on one or more of those powers." *Id.*

Here, the issue is whether application of § 16913 to Mr. Carel exceeds the scope of Congress's enumerated powers. We hold that it does not. Specifically, based on Congress's authority to enact Mr. Carel's original statute of conviction, we hold that Congress had corresponding Necessary and Proper Clause authority to require Mr. Carel—a federal sex offender on supervised release for violating that statute—to comply

with § 16913's registration provisions.  *See Comstock*, 130 S. Ct. at 1964 (noting that the Necessary and Proper Clause provides Congress with authority to regulate the behavior of federal offenders "even after their release"); *United States v. Plotts*, 347 F.3d 873, 879 (10th Cir. 2003) ("[P]ursuant to the Necessary and Proper Clause Congress may fashion penalties for the violation of valid federal laws.").

The Necessary and Proper Clause provides that "[t]he Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."  U.S. Const. art. I, § 8, cl. 18. In the landmark case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the Supreme Court—with Chief Justice Marshall writing—explained that the Necessary and Proper Clause accords Congress "the right to legislate in that vast mass of incidental powers which must be involved in the constitution, if that instrument be not a splendid bauble." *Id.* at 421.  The Court emphasized that the word "necessary" does not mean "absolutely necessary." *Id.* at 413-15.  In a passage that has come to define the scope of the Necessary and Proper Clause, Chief Justice Marshall stated:  "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." *Id.; see also Comstock*, 130 S. Ct. at 1956 (noting that Chief Justice Marshall's ends/means test "has come to define the scope of the Necessary and Proper Clause").

14

The Supreme Court has consistently recognized the breadth of the Necessary and Proper Clause. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3165 (2010) ("Congress has broad power to enact statutes 'necessary and proper' to the exercise of its specifically enumerated constitutional authority."); *Katzenbach v. Morgan*, 384 U.S. 641, 650 (1966) ("By including § 5 the draftsmen sought to grant to Congress, by a specific provision applicable to the Fourteenth Amendment, *the same broad powers expressed in the Necessary and Proper Clause*." (emphasis added)).

In *Comstock* the Court stated that "the Necessary and Proper Clause grants Congress broad authority to enact federal legislation." 130 S. Ct. at 1956. The Court stated: "[E]very law enacted by Congress must be based on one of or more [of its enumerated] powers. But, at the same time, a government entrusted with such powers must be entrusted with ample means for their execution." *Id.* (quotations and citations omitted). The Court further stated that "the Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient or useful' or 'conducive' to the authority's beneficial exercise." *Id.* Of course, a law enacted pursuant to Congress's authority under the Necessary and Proper Clause cannot violate other constitutional provisions. *See Plotts*, 347 F.3d at 878.

"In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact [or apply] a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a

15

constitutionally enumerated power." *Comstock*, 130 S. Ct. at 1956; *see also Gonzales v. Raich*, 545 U.S. 1, 22 (2005) (holding that because "Congress had a rational basis" for concluding that a statute implemented Commerce Clause power, the statute fell within the scope of congressional "authority to make all laws which shall be necessary and proper" (quotations omitted)); *Sabri v. United States*, 541 U.S. 600, 605 (2004) (using the "means-ends rationality" to determine if Congress had authority to enact a statute under the Necessary and Proper Clause); *Plotts*, 347 F.3d at 878 ("At bottom, . . . the Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional restraints, that bear a rational connection to any of its enumerated powers." (quotations omitted)).

The Court has explained that a statute can be rationally related to the implementation of a constitutionally enumerated power even if there is "more than a single step between an enumerated power and [the Statute]." *Comstock*, 130 U.S. at 1964. Thus, a statute need only be "ultimately derived from an enumerated power," *id.* (quotations omitted), and "rationally related to the implementation of [the] constitutionally enumerated power" to be a proper exercise of Congress's authority under the Necessary and Proper Clause. *Id.* at 1956.

For instance, apart from a few limited exceptions, "Congress's power to criminalize conduct . . . is [not] explicitly mentioned in the Constitution." *Id.* at 1958. But the Supreme Court has consistently held that the Necessary and Proper Clause provides Congress "implied power to criminalize any conduct that might interfere with the exercise of an enumerated power." *Id.* at 1964; *see also, e.g.*, *id.* at 1957 ("[T]he

16

Constitution, which nowhere speaks explicitly about the creation of federal crimes beyond those related to counterfeiting, treason, or Piracies and Felonies committed on the high Seas or against the law of Nations, nonetheless grants Congress broad authority to create such crimes." (quotations and citations omitted)); *Sabri*, 541 U.S. at 605 (upholding a criminal statute enacted in furtherance of the Spending Clause); *Jinks v. Richland Cnty.*, 538 U.S. 456, 462 n.2 (2003) (describing perjury and witness tampering as federal crimes enacted in furtherance of the power to constitute federal tribunals); *Lottery Case*, 188 U.S. 321 (1902) (upholding a criminal statute enacted in furtherance of the Commerce Clause); *Ex parte Yarbrough*, 110 U.S. 651 (1884) (upholding Congress's authority to enact a federal statute criminalizing civil-rights violations because it was necessary and proper to protect suffrage rights conferred under the Fifteenth Amendment).

Similarly, neither Congress's power to punish individuals who violate its laws, "nor its power to enact laws governing prisons and prisoners, is explicitly mentioned in the Constitution." *Comstock*, 130 S. Ct. at 1958. But the Court has stated that "Congress nonetheless possesses broad authority to do each of those things in the course of carrying into Execution the enumerated powers vested by the Constitution in the Government of the United States—authority granted by the Necessary and Proper Clause." *Id.* at 1958 (quotations and citations omitted); *see also McCulloch*, 17 U.S. at 416 ("All admit that the government may, legitimately, punish any violation of its laws; and yet, this is not among the enumerated powers of Congress.").

For example, in *Greenwood v. United States*, 350 U.S. 366 (1956), the Court upheld the civil commitment of a mentally incompetent federal defendant who was accused of robbing a United States Post Office as an appropriate exercise of congressional power under the Necessary and Proper Clause. *See id. at* 369, 375. Recently, the Court explained that the enumerated Article I power underlying its decision in *Greenwood* was "the power to 'Establish Post Offices and Post Roads.'" *Comstock*, 130 S. Ct. at 1963 (quoting U.S. Const. art. I, § 8, cl. 7). The Court noted: "[A]s Chief Justice Marshall recognized in *McCulloch*, 'the power to establish post offices and post roads . . . is executed by the single act of *making* the establishment.'" *Id.* (quoting *McCulloch*, 17 U.S. at 417). The Court then explained that from the enumerated power to establish post offices and post roads "has been inferred the right to *punish* those who steal letters from the post office or rob the mail." *Id.* (quotations omitted). Additionally, it explained that "from the implied power to punish [has been] *further* inferred both the power to imprison" and the power to impose civil sanctions on those who violate validly enacted federal laws. *Id.* (quotations omitted).

The Court recently applied its Necessary and Proper Clause analysis to a federal criminal statute in *United States v. Comstock*. *See* 130 S. Ct. 1949. In *Comstock*, the Court was called upon to determine whether the Necessary and Proper Clause authorized Congress to enact a federal statute that permits the civil commitment of a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released from federal custody. *Id.* at 1954. The Court concluded that the federal statute—18 U.S.C. § 4248—was "reasonably adapted to Congress's power to act as a

18

responsible federal custodian."[8]  *Id.* at 1961.  It explained that the power "to act as a . . .

federal custodian . . .  rests . . . upon federal criminal statutes that legitimately seek to

implement constitutionally enumerated authority."  *Id.*  The Court then stated:

> Congress could have reasonably concluded that federal
> inmates who suffer from a mental illness that causes them to
> "have serious difficulty in refraining from sexually violent
> conduct," § 4247(a)(6), would pose an especially high danger
> to the public if released. *Cf.* H. R. Rep. No. 109-218, at 22-
> 23. And Congress could also have reasonably concluded (as
> detailed in the Judicial Conference's report) that a reasonable
> number of such individuals would likely *not* be detained by
> the States if released from federal custody, in part because the
> Federal Government itself severed their claim to "legal
> residence in any State" by incarcerating them in remote
> federal prisons.  H. R. Rep. No. 1319, at 2; Committee
> Report 7-11, App. 69-75; cf. *Post*, at ___, 176 L. Ed. 2d, at
> 902 (Kennedy, J., concurring in judgment). Here, *Congress'*
> *desire to address the specific challenges identified in the*
> *Reports cited above, taken together with its responsibilities as*
> *a federal custodian, supports the conclusion that § 4248*
> *satisfies "review for means-end rationality," i.e., that it*
> *satisfies the Constitution's insistence that a federal statute*
> *represent a rational means for implementing a constitutional*

---

[8]In *Comstock*, the Court relied on five considerations in reaching its conclusion that § 4248 was constitutional:  "(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in this arena, (3) the sound reasons for the statute's enactment in light of the Government's custodial interest in safeguarding the public from dangers posed by those in federal custody, (4) the statute's accommodation of state interests, and (5) the statute's narrow scope. *See* 130 S. Ct. at 1965.  Although the Court referenced these considerations, it did not suggest that they should be balanced or considered in every Necessary and Proper Clause analysis. *See Kebodeaux*, 647 F.3d at 142-43 (en banc opinion pending); *see also Yelloweagle*,  643 F.3d at 1284-85 (referencing *Comstock*  but not addressing its five considerations).  Rather, the five considerations appear to be an articulation of the reasons that supported the Court's conclusion that the statute at issue was constitutional.  *See Kebodeaux*, 647 F.3d at 142-43.

> *grant of legislative authority. Sabri*, 541 U.S., at 605 (citing
> *McCulloch*, 17 U.S. 316).

*Id.* at 1961-62 (second emphasis added and some citations omitted).

We applied a similar Necessary and Proper Clause analysis in *United States v. Plotts*. *See* 347 F.3d at 877-80. In *Plotts*, the defendant pled guilty to possession of child pornography. *See id.* at 875. As a condition of his supervised release, the defendant was required to "cooperate in the collection of his DNA" as required by the DNA Act. *Id.* On appeal, the defendant challenged the constitutionality of the DNA Act, arguing that Congress had exceeded the scope of its "authority to legislate" by enacting it. *Id.* at 877.

We rejected the defendant's claim, explaining that "the Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional restraints, that bear a rational connection to any of its enumerated powers." *Id.* at 878 (quotations omitted). We then explained that under the Necessary and Proper Clause, "Congress has the power to impose nonpunitive sanctions for the violations of criminal statutes." *Id.* at 879 n.5; *see also Yelloweagle*, 643 F.3d at 1285 ("Congress, in order to help ensure the enforcement of federal criminal laws enacted in furtherance of its enumerated powers, can erect civil regulatory regimes rationally related to effectuating a constitutional grant of legislative authority, which the enumerated powers provide." (quotations and citations omitted)). After determining that the "Commerce Clause empower[ed] Congress to criminalize the receipt of child pornography over the internet—the crime to which [the defendant] pled guilty," *Plotts*, 347 F.3d at 879, we concluded that Congress was authorized under the Necessary and Proper Clause to enact the DNA Act as an

appropriate civil sanction for the violation of the validly enacted federal law. *See id.* at 880.

2. ***Application to Mr. Carel's Claim***

The cases addressed in the foregoing discussion demonstrate that, pursuant to the Necessary and Proper Clause, "Congress has the implied power to criminalize any conduct that might interfere with the exercise of an enumerated power, and also the additional power to imprison people who violate those (inferentially authorized) laws, and the additional power to provide for the safe and reasonable management of those prisons, and the additional power to regulate those prisoners' behavior *even after their release*." *Comstock*, 130 U.S. at 1964 (emphasis added). They further demonstrate that Congress also has the power to impose nonpunitive civil sanctions on individuals convicted of violating a validly enacted federal criminal statute. *See id.* at 1965; *Plotts*, 347 F.3d at 879 n.5. "[E]ach of th[e]se powers . . . is ultimately derived from . . . the enumerated power that justifies a criminal defendant's arrest or conviction." *Comstock*, 130 U.S. at 1964 (quotations omitted).

Mr. Carel's status as a sex offender is based on his prior conviction for sexual abuse of a minor in Indian country. Like the child pornography statute at issue in *Plotts*, it is undisputed that Congress has authority to criminalize sexual abuse of a minor in Indian country. *See, e.g.*, *United States v. Kagama*, 118 U.S. 375, 383-85 (1886) (holding that Congress has authority to criminalize conduct that occurs on Indian reservations); *see also United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2327 (2011) (recognizing *Kagama* as sound authority). Indeed, the Supreme Court has

expressly stated that "Congress has undoubted constitutional power to prescribe a criminal code applicable in Indian country." *United States v. Antelope*, 430 U.S. 641, 648 (1977). Accordingly, to determine whether Congress exceeded the scope of its authority by requiring Mr. Carel to register as a sex offender, we need only decide whether § 16913 "is rationally related to the effectuation of that criminal statute and, thus, consonant with the Constitution's insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority." *Yelloweagle*, 643 F.3d at 1287 (quotations and citations omitted).

We conclude that application of § 16913 to Mr. Carel—a federal sex offender on supervised release—satisfies this rational-relation test. As applied to Mr. Carel, § 16913 is "reasonably adapted," *United States* v. *Darby*, 312 U.S. 100, 121 (1941), to the effectuation of the statute under which Mr. Carel was convicted and to Congress's authority to impose nonpunitive civil sanctions on those who violate validly enacted federal criminal statutes. *See Comstock*, 130 U.S. at 1964-65; *Plotts*, 347 F.3d at 879 n.5.

SORNA's declared purpose is to "to protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. Congress could reasonably have concluded that federally adjudicated sex offenders would pose an especially high danger to the public if released from custody, or permitted to remain in the public on supervised release, without being required to register as a sex offender. And, as suggested in SORNA's legislative history, Congress could have reasonably concluded that a

reasonable number of such individuals would likely *not* comply with state sex-offender

registration requirements without a federal statute requiring them to do so.

Congress's desire to address these specific challenges, taken together with its

direct supervisory interest over Mr. Carel—a federal sex offender on supervised release

due to a conviction for a validly enacted federal criminal offense—supports the

conclusion that § 16913 "satisfies review for means-ends rationality." *Comstock*, 130

U.S. at 1962 (quotations omitted); *see also Carr*, 130 S. Ct at 2239 (noting that "the

Federal Government has a direct supervisory interest" over persons convicted of federal

crimes").

Mr. Carel contends that § 16913 cannot be upheld as a valid exercise of

Congress's authority under the Necessary and Proper Clause for several reasons. He first

argues that the Supreme Court's reasoning in *Comstock* is inapplicable to this case

because the civil-commitment statute at issue in *Comstock* applies only to federal

offenders who are in federal custody.[9] Mr. Carel is correct that, on its face, § 16913

applies to *all* federal sex offenders, even those not currently in federal custody or on

federal probation or supervised release, and that the scope of § 16913 is broader than the

statute at issue in *Comstock*. But as explained above, Mr. Carel was required to comply

with § 16913 as a condition of his supervised release and was still on supervised release

---

[9]Mr. Carel offers several hypothetical scenarios in support of his position that Congress does not have authority under the Necessary and Proper Clause to apply § 16913 to federal sex offenders. However, because Mr. Carel has asserted an as-applied challenge, we do not address the hypothetical scenarios he has raised. *See Scherer*, 653 F.3d at 1245 (noting that in an as-applied challenge, plaintiffs "seek to vindicate their own rights based on *their own circumstances*" (emphasis added)).

when he was prosecuted for failing to comply with SORNA's requirements.  Because we review Mr. Carel's constitutional challenge to § 16913 as an as-applied challenge, we need not and do not address whether application of § 16913 to a federal sex offender *not* in federal custody or on federal supervised release would be a permissible exercise of congressional authority under the Necessary and Proper Clause.

Next, Mr. Carel argues that the federal government's authority to safeguard the public from dangers posed by federal offenders is limited to "safeguarding the public from those in federal *custody*."  Aplt. Reply Br. at 30.  But *Comstock* expressly recognized that, pursuant to the Necessary and Proper Clause, "Congress has the implied power to criminalize any conduct that might interfere with the exercise of an enumerated power, and also the additional power to imprison people who violate those (inferentially authorized) laws, and the additional power to provide for the safe and reasonable management of those prisons, and the additional power to regulate those prisoners' behavior *even after their release*."  130 U.S. at 1964 (emphasis added).

Finally, Mr. Carel argues that requiring him to register as a sex offender is too attenuated from Congress's authority to enact the statute under which he was originally convicted.  His argument appears to rely on a theory similar to one advanced by the petitioner in *Comstock*—that "when legislating pursuant to the Necessary and Proper Clause, Congress's authority can be no more than one step removed from a specifically enumerated power."  *See* 130 S. Ct. at 1963.  But *Comstock* rejected this argument.  *See Id.* at 1964 ("[W]e must reject respondents' argument that the Necessary and Proper Clause permits no more than a single step between an enumerated power and an Act of

Congress."). We recognize that there are several logical steps between Congress's authority to criminalize sexual abuse of a minor in Indian country and its ability to require a person convicted of that offense who is on supervised release to register as a sex offender. However, because it is undisputed that Congress had authority to enact the statute under which Mr. Carel was convicted and because § 16913 is reasonably adapted to the effectuation of that statute and to Congress's authority to impose nonpunitive civil sanctions on those who violate that statute, the number of steps between Congress's action and its enumerated power is not determinative. *See id.*

## IV. CONCLUSION

Based on Congress's authority to enact Mr. Carel's original statute of conviction, we hold that Congress had corresponding Necessary and Proper Clause authority to require Mr. Carel—a federal sex offender on supervised release for violating that statute—to comply with § 16913's registration provisions. We therefore reject Mr. Carel's as-applied challenge to § 16913 and affirm his conviction and sentence.