

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00259-CV

ESKIMO HUT WORLDWIDE, LTD, APPELLANT

V.

SOUTH PLAINS SNO, INC., BRAD SALLEY, AND KATHY SALLEY, APPELLEES

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 73454C, Honorable Ana Estevez, Presiding

February 26, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

In 2019, this Court addressed an interlocutory appeal from the grant of a temporary injunction in favor of Eskimo Hut Worldwide, Ltd. ("Worldwide") in the same cause number, the same court, the same parties, and the same issues. *S. Plains SNO, Inc. v. Eskimo Hut Worldwide, Ltd.*, No. 07-19-00003-CV, 2019 Tex. App. LEXIS 3015, at *1 (Tex. App.—Amarillo Apr. 12, 2019, no pet.). In that appeal, we held that Worldwide presented sufficient evidence to support the trial court's conclusion that South Plains was failing to comply with the terms of a franchise agreement defining the uniform standards,

preparation, and methods and material for preparing frozen beverages menu items sold under the "Eskimo Hut" name. The present permissive appeal[1] from the trial court's ruling on the parties' cross-motions for summary judgment asks whether some of the franchise agreement's terms run afoul of section 109.53 of the Texas Alcoholic Beverage Code. We answer that question, "No," modify the order of the district court, and remand so that the court can take action and render final judgment with the benefit of this opinion.

## Background

Eskimo Hut is a franchise of convenience stores, operated by Worldwide, offering frozen alcoholic and non-alcoholic drinks. The term "Eskimo Hut" and its logo are trademarked and owned by Appellant. Brad and Kathy Salley operate South Plains Sno[2] as a franchisee of Eskimo Hut in Lubbock, Texas, and run three stores under the trademarked Eskimo Hut name and logo. These stores, licensed under South Plains' wine and beer retailer's permit from the Texas Alcoholic Beverage Control Commission (TABCC), create beverages by blending Worldwide's non-alcoholic base mix and flavoring with water. Optionally, alcohol can be added to the beverage.

The franchise agreement sets out several obligations with which South Plains must comply, including the following, which is stated in relevant part:

> 7(D): "[South Plains] agrees to promote, prepare, and sell only the frozen drink products and combinations as specified by [Worldwide] in the Confidential Operating Manual, if any, and any operations bulletins supplied

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (authorizing trial court to permit an interlocutory appeal when "(1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation").

[2] We refer to the Appellees collectively as "South Plains."

by [Worldwide]. [Worldwide], in its sole and absolute discretion, may approve or deny [South Plains'] request to eliminate some or add other menu items . . . ."

7(F): (1) "[South Plains] shall purchase only from [Worldwide] . . . or from [Worldwide's] approved suppliers who have acquired such products through [Worldwide], all of its requirements for frozen drink mixes and such other future products as may then be required by [Worldwide] . . ."

(2) "Except as provided in Section 7.F.(1) of this Agreement, [South Plains] shall purchase for use in the operation of any Facility certain products which bear The Eskimo Hut Proprietary Marks that may include [list of products] . . . . All Trademarked Products shall comply with the specifications set forth in the Confidential Operating Manual or operations bulletins . . ."

Litigation ensued regarding the breadth and enforceability of the franchise agreement. Worldwide alleged that South Plains was in breach of the agreement when it refused to purchase Worldwide's prescribed base mix and flavors. Brad Salley admitted to substituting non-Worldwide base mix and flavorings,[3] but contended the requirement contravenes section 109.53 of the Texas Alcoholic Beverage Code. South Plains also alleges that Worldwide, motivated by "kickbacks," attempted to use the agreement to dictate South Plains' source of alcohol.[4]

After the district court issued a temporary injunction that prohibited South Plains from using non-approved base mix and deviating from Worldwide's methods for preparing frozen beverages, South Plains brought an interlocutory appeal. We affirmed, rejecting South Plains' argument that Worldwide's contractual right of control over the recipes is "a scheme which causes South Plains to surrender control of its business, in violation of

---

[3] At oral argument, counsel for the Appellees said that Appellees are now in full compliance with Worldwide's recipes.

[4] South Plains' most recent petition states that this practice has ceased.

3

Section 109.53 [of] the Texas Alcoholic Beverage Code." 2019 Tex. App. LEXIS 3015, at *10 (Tex. App.—Amarillo Apr. 12, 2019, no pet.).

In 2020, the TABCC issued a warning, suggesting the franchise agreement might constitute an illegal attempt to govern alcohol purchases in violation of section 109.53. Worldwide sued TABCC, and the matter was resolved after execution of a Rule 11 Agreement. In May 2020, TABCC clarified its position that the franchise agreement would not violate the Code so long as it does not mandate buying alcohol from any particular supplier.

Meanwhile, litigation between Worldwide and South Plains continued in the trial court. The parties filed cross-motions for summary judgment. In August 2022, the district court signed an amended interlocutory order that purported to partially grant South Plains' motion for summary judgment and deny Worldwide's motion. In an April 2022 order, the trial court declared the following in part:

> . . . THE COURT DECLARES that Sections 7(d) and 7(f) of the Franchise Agreement are illegal because they control the Alcoholic Beverages (any beverage that contains ½ of 1% of alcohol by volume) sold by South Plains Sno, Inc.; however, the provision of the Franchise Agreement requiring South Plains Sno, Inc. to purchase non-alcoholic base mix and flavoring from Eskimo Hut Worldwide does not violate Section 109.53 of the Texas Alcoholic Beverage Code, because it does not require, directly or indirectly, the purchase of any product from a permittee of a different level.

On August 25, 2022, the court amended its order by adding the words "as applied" before reference to paragraphs 7(d) and 7(f); *viz.*: " . . . THE COURT DECLARES that as applied, Sections 7(d) and 7(f) of the Franchise Agreement are illegal because they control the Alcoholic Beverages [sold by South Plains] . . . ." (emphasis added). The court did not

4

strike paragraphs 7(d) or 7(f) from the franchise agreement. However, the court did enjoin Worldwide from (1) controlling or limiting in any way the types and brands of alcoholic beverages including frozen alcoholic beverages in its retail stores; (2) controlling or limiting in any way the types and brands of alcohol sold by South Plains in its retail stores; (3) controlling or limiting in any way the types and brands of alcohol purchased or used by South Plains in its retail operations; and (4) prohibiting South Plains from selling any type or brand of alcoholic beverage including frozen alcoholic beverages in its retail stores.

Worldwide brought this permissive appeal, presenting nine issues the trial court found to be controlling questions of law to which there is a substantial ground for difference of opinion, and the resolution of which would materially advance the ultimate termination of the litigation.[5]

---

[5] *See Eskimo Hut Worldwide v. S. Plains Sno*, No. 07-22-00259-CV, 2023 Tex. App. LEXIS 254, at *1–3 (Tex. App.—Amarillo Jan. 9, 2023, no pet. h.) (accepting the following questions as presented by the trial court):

A) Whether Section 109.53 of the Texas Alcoholic Beverage Code prohibits [Worldwide] from controlling or limiting in any way the types and brands of the Alcoholic Beverages (any beverage containing 1/2 of 1% of alcohol by volume), including frozen Alcoholic Beverages, sold by [South Plains] in its retail stores;

B) Whether Section 109.53 of the Texas Alcoholic Beverage Code prohibits [Worldwide] from controlling or limiting in any way the types and brands of alcohol sold by [South Plains] in its retail stores;

C) Whether Section 109.53 of the Texas Alcoholic Beverage Code prohibits [Worldwide] from controlling or limiting in any way the types and brands of alcohol purchased or used by [South Plains] in its retail operations;

D) Whether the provision of the Franchise Agreement requiring [South Plains] to purchase non-alcoholic base mix and flavoring from [Worldwide] is permissible under Section 109.53, so long as it does not require, directly or indirectly, the purchase of any product from a permittee of a different level; []

## Analysis

Even though the questions presented to this Court are numerous, each depends on the proper scope of section 109.53 of the Texas Alcoholic Beverage Code.[6]

<u>1. Texas Law Prevents Control by Subterfuge of Licensed Premises Involved in the Possession and Sale of Alcohol.</u>

"Intoxicating liquor is the only consumer product identified in the Constitution." *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 813 (5th Cir. 2010) (citing U.S. CONST. amend. XXI). Within areas of its jurisdiction, states possess "'virtually complete control' over the importation and sale of liquor and the structure of the liquor distribution system." *North Dakota v. United States*, 495 U.S. 423, 431, 110 S. Ct. 1986, 1992, 109 L. Ed. 2d 420 (1990). In Texas, section 109.53 of the Alcohol Beverage Code denies an

---

E) The applicability of Section 109.53 to a Beer and Wine (BG) Permit issued by the Texas Alcoholic Beverage Commission.

F) Does Section 7(d) of the franchise agreement . . . prohibit [South Plains] from mixing and selling frozen "Alcoholic Beverages," (as defined in TEX. ALCO. BEV. CODE § 1.04(1)) which are not made according to recipes specified by [Worldwide]?

G) Does Section 7(f) of the franchise agreement . . . prohibit [South Plains] from mixing and selling frozen Alcoholic Beverages which do not include flavoring mixes as specified by [Worldwide]?

H) Do Sections 7(d) and 7(f) . . . prohibit [South Plains] from selling commercially available pre-mixed frozen Alcoholic Beverages?

I) If the answer to part (f), part (g) or part (h) is yes, is such prohibition illegal under TEX. ALCO. BEV. CODE § 109.53 as an attempt to control the sale of Alcoholic Beverages purchased, stored or sold on the licensed premises by [South Plains]?).

[6] We review, de novo, questions of statutory construction. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Our objective is to give effect to the legislature's intent, "'which we ascertain from the plain meaning of the words used in the statute' because the best indicator of what the legislature intended is what it enacted." *Brazos Elec. Power Coop, Inc. v. Tex. Comm'n on Env't Quality*, 576 S.W.3d 374, 384 (Tex. 2019) (cleaned up). We do not construe individual provisions in isolation but "analyze statutes 'as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and what they excluded.'" *Texas Workforce Comm'n v. Wichita County*, 548 S.W.3d 489, 492 (Tex. 2018) (quoting *Sommers v. Ala. & Dunlavy, Ltd. v. Sandcastle Homes Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)); *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

alcohol permit to a person under certain circumstances.[7]   Section 109.53 also identifies

the permit holder (in this case, South Plains) as possessing exclusive control over

alcoholic beverages on the premises.   It says the following in relevant part:

> Every permittee shall have and maintain exclusive occupancy and control
> of the entire licensed premises in every phase of the storage, distribution,
> possession, and transportation and sale of all alcoholic beverages
> purchased, stored or sold on the licensed premises.[8]   Any device, scheme
> or plan which surrenders control of the employees, premises or business of
> the permittee to persons other than the permittee shall be unlawful.

(ellipses added).

The parties disagree about what this portion of section 109.53 means and how it

affects obligations under the franchise agreement.   For example, South Plains reasons

that because it holds the permit, Worldwide possesses little contractual ability to control

anything at Eskimo Hut locations due to the potential effect on alcohol sales and

purchases.[9]   Reading in isolation the "any device, scheme, or plan" language in section

109.53 might support South Plains' interpretation.   But when we construe statutes, we

consider the context in which all words appear.   *Greater Houston P'ship v. Paxton*, 468

S.W.3d 51, 59 (Tex. 2015).   Consistent with the principle of *ejusdem generis*, we avoid

assigning an expansive meaning when statutory terms are immediately preceded by

narrow and specific words.   *See Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111

---

[7] Per section 11.01(a)(1), obtaining a permit is a prerequisite to manufacturing, distilling, brewing, selling, possessing for sale, importing, exporting, transporting, distributing, warehousing, or storing liquor in this state.

[8] A "licensed premise" is discussed in section 11.49.

[9] At oral argument, counsel for South Plains agreed "It's exactly how I read the statute," when asked whether the proper reading of section 109.53 permits South Plains to ignore the franchise agreement, refuse to pay royalties, and use non-conforming supplies and signage, as the end-product sold to the consumer contains alcohol.

S.W.3d 75, 81 (Tex. 2003) (observing that when words of a general nature are used in connection with the designation of particular objects, persons, or things, the meaning of the general words should conform to the more particular designation). Important here, the term "control" appears twice in the passage. They provide that "control" over the licensed premises pertains to the storage, distribution, possession, transportation, and sale of "alcoholic beverages purchased, stored or sold on the licensed premises." Therefore, the statute's prohibition against South Plains surrendering control to Worldwide is not universal, but is confined to those matters involving the purchase, storage, and sale of beverages containing one-half of one percent of alcohol by volume. This interpretation aligns not only with the plain language of section 109.53, but also the legislative goal of preventing non-permittees from circumventing the state's regulation of alcohol sales through covert conduct.

## 2. The Franchise Agreement Is Not Illegal On Its Face.

Our Supreme Court has held that generally, parties may contract as they wish "so long as the agreement reached does not violate positive law or offend public policy." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 877 (Tex. 2018) (*quoting Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 503–04 (Tex. 2015)). A contract clause that potentially encompasses illegal conduct will not be rendered invalid unless its performance is impossible without violating Texas law or where "the injury to the public is clear."[10] *See White*, 490 S.W.3d at 483–84; *Huey v. Brand*, 92 S.W.2d 505,

---

[10] This record presents no evidence that the contract issues in this case threaten any injury to the public.

508 (Tex. App.—Amarillo 1936), *aff'd sub nom. Borger v. Brand*, 131 Tex. 614, 118 S.W.2d 303 (Tex. Comm'n App. 1938)).

Despite South Plains' contention that the agreement necessarily relates to alcohol purchases and sales, there is no mention of alcoholic beverages in the language of the paragraphs the district court found to be illegal. This is important because Texas law presumes that when a contract <u>can be</u> performed in a legal manner, it "will not be declared void because it <u>may have been</u> performed in an illegal manner." *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 483 (Tex. 2016) (emphasis added) (*quoting Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 149 (1947)). *See also Estate of Grimes v. Dorchester Gas Producing Co.*, 707 S.W.2d 196, 203 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.) (collecting cases). For nearly a century, Texas law has provided that when a contract can be interpreted in two ways—one that would invalidate it and another that would uphold it—the interpretation maintaining the contract's validity should be chosen. *See Tex. Employers' Ins. Ass'n v. Tabor*, 283 S.W. 779, 780 (Tex. Comm'n App. 1926, jmt. adopted).

Although the parties appeared to agree at oral argument that section 109.53 prohibits Worldwide from dictating the types of alcoholic drinks sold and the brands of alcohol South Plains may elect to use,[11] the agreement's reach also extends to the purchase, storage, and sale of items that do not contain alcohol. Section 109.53 therefore does not prevent an agreement for South Plains to exclusively buy and use Worldwide's

---

[11] Worldwide concedes it cannot control South Plains' buying or selling of commercially-available "pre-mixed" items that already include alcohol.

9

branded supplies, such as cups and signage. Similarly, a provision that South Plains can only use non-alcoholic beverage mixes and flavorings sold by Worldwide is not barred by section 109.53[12]–even if such mixes and flavorings might eventually find their way into a beverage containing alcohol.[13] Adopting South Plains' proposed interpretation of Texas law would allow the potential illegality of the franchise agreement to turn on whether the franchisee chose to add alcohol to a drink. We hold the relevant portion of the franchise agreement's terms is not facially at odds with section 109.53 of the Alcoholic Beverage Code. Because it appears the district court found agreement paragraphs 7(d) and 7(e) to be unenforceable for violating the Code, we hold that the trial court committed error. We sustain Worldwide's issue.

### 3. Remand for Further Proceedings.

Of course, section 109.53's provisions are not limited to contracts, but pertain to "any device, scheme, or plan." What, then, do we make of the trial court's determination that the agreement is illegal "as applied"? Given the remainder of the order, including the trial court's finding that some portions of paragraph 7 are not illegal, as well as the grant of injunctive relief against Worldwide's employees, officers, and others, we believe the trial court's "as applied" language may be intended to convey that Worldwide, through the

---

[12] The trial court recognized the validity of a portion of the agreement, finding that requirements for South Plains "to purchase non-alcoholic base mix and flavoring from [Worldwide] does not violate Section 109.53 of the Texas Alcoholic Beverage Code, because it does not require, directly or indirectly, the purchase of any product from a permittee of a different level."

[13] This distinction is important to resolving the present dispute. The president of Worldwide's general partner concedes that Worldwide cannot dictate the beer and wine, if any, that South Plains can serve in stores or is mixed into drinks. However, some mixed drinks, like daiquiris and margaritas, may also require inclusion of non-alcoholic ingredients. Our holding today is straightforward: section 109.53 does not prohibit Worldwide from contractually requiring South Plains to purchase and exclusively use non-alcoholic mixes and flavorings sold by Worldwide.

conduct of its agents, illegally pressured South Plains to surrender control over alcoholic beverages purchased, stored or sold at Eskimo Hut locations.[14]  The trial court's order presently does not identify conduct it believes violates the statute.  Therefore, we remand this case to enable the trial court to have an opportunity to amend its order and make a finding in light of this opinion.  *See Scroggins v. Buyers Barricades, Inc.*, No. 02-22-00186-CV, 2022 Tex. App. LEXIS 7629, at *19 (Tex. App.—Fort Worth Oct. 13, 2022, no pet. h.).

## Conclusion

Having decided at least one controlling question of law in Worldwide's favor and finding that further proceedings are necessary, we reverse the trial court's interlocutory order granting summary judgment in favor of South Plains and remand this case to the trial court for the entry of a final judgment following disposition of all remaining issues.

Lawrence M. Doss
Justice

---

[14] This language potentially originates in discussions regarding constitutional law: an "as-applied" challenge concedes that a statute is not unconstitutional under every set of circumstances, but urges it violates the law given the case's particular circumstances or parties.  *See Doe v. Reed*, 561 U.S. 186, 194, 130 S. Ct. 2811, 2817 (2010)*; Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014)*; United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011).